No. 12,770.

STATE EX REL. MOYSE BROTHERS VS. HON. WALTER GUION, JUDGE, ET ALS.

A district judge having granted and made a writ of *mandamus* against a justice of the peace peremptory, commanding him to grant a writ of injunction against the consummation of an execution sale, because the defendant had not been notified of the proceedings antecedent to trial and judgment, same will not be disturbed or inquired into by means of *certiorari* and prohibition, if same appear to have been regular and jurisdictional.

ON APPLICATION for Writs of *Certiorari, Mandamus* and Prohibition.

*Edmond Maurin* for Relators.

---

Respondent Judge and Justice of the Peace for themselves.

Submitted on briefs March 21, 1898.

Opinion handed down April 4, 1898.

Rehearing refused, reasons assigned, May 16, 1898.

The opinion of the court was delivered by

WATKINS, J. The statement of the relator is, that on the 7th of September, 1897, a judgment was rendered in their favor and against the defendant, Joseph Bradford, by Owen Lenares, Justice of the Peace for the fourth ward of Ascension parish, for the sum of one hundred dollars; and that after legal forms had been complied with, and due notice had been served on the defendant of the judgment pronounced against him, an execution was issued, and certain movable property seized in satisfaction of said judgment and duly advertised for sale.

That a few days previous to the time of sale, the judgment debtor, Bradford, presented a petition to the aforesaid justice of the peace praying for a writ of injunction restraining said sale upon the ground that " no notice of the trial had been served upon him;" but that the justice declined to grant the writ, " because the ground alleged for said writ was negatived by said judgment on its face," etc.

That thereupon said Bradford applied to the respondent judge of the District Court for a writ of *mandamus* to coerce said justice of the peace to grant said injunction, and prohibit further proceedings under said injunction, and prohibit further proceedings under said *fi. fa.* and the sale thereunder.

That the respondent granted the writ of *mandamus*, and upon the trial thereof made same peremptory, and commanded the respondent justice of the peace to issue the writ of injunction prayed for.

On this statement of facts the relators herein aver that the action of the aforesaid respondent judge in issuing said writ of *mandamus*, and making same peremptory, is and was an usurpation of authority, and therefore illegal and void, and that said justice of the peace and constable holding said *fi. fa.* are and were not bound to respect them, but should disregard them and proceed with the execution of said judgment and the sale of said property. That the writ of *mandamus* does not lie to compel a judge, or court of inferior jurisdiction to grant an injunction in any case in which he is vested with a judicial discretion either to refuse or to issue said writ; and in this particular instance the relators aver that the petition for

injunction " was in direct conflict with the decree of the court," *i. e.*, the justice of the peace.

On the foregoing representations, relators demand relief by *certiorari* and prohibition as to the act of the respondent judge, and by *mandamus* to compel the aforesaid justice of the peace and constable to disregard said injunction suit, and proceed with said execution and sale.

The respondent substantially returns that on the foregoing statement of the relators' petition he entertained the opinion that the respondent justice of the peace was without any discretion in the premises, because the law declares that when an execution is being proceeded with contrary to law, an injunction *must* issue if prayed for, and no discretion is given in such case, to the judge who is applied to for it—citing Code of Practice, Art. 298, No. 10.

That, as under the law, the sworn allegations of the petition for injunction are to be taken as true, the judgment sought to be enjoined was absolutely null and void, however perfect in form it might have appeared to have been.

That in his opinion it was the plain duty of the justice of the peace to have granted the writ of injunction, because he was vested with no discretion in the premises at all. Evidently an injunction was the *only* remedy the alleged judgment debtor had; and if, as alleged, the proceedings in the justice court were illegal, and no notice of the trial had been served upon him, the defendant was entitled to have the proceedings, under the judgment and execution, arrested. C. P. 608.

The assignment by the justice of the peace of the *perfect regularity* of the proceedings in his court *on the face of the papers as* being a sufficient warrant for his refusal of the writ of injunction, strikes us as a novel proposition, indeed. Such a theory being recognized would result in stating every injunction out of court, if need be.

Notwithstanding the point has not been raised in the pleadings or argument, it has become necessary, that we should consider whether or not the respondent judge has legal power to grant the writ of *mandamus* under the circumstances, same not having been granted in aid of the appellate jurisdiction of his court.

The Constitution confers upon this court the power to grant the writ in aid of its supervisory jurisdiction. Article 90.

It confers upon the judges of the courts of appeal the power to grant the writ " in aid of their appellate jurisdiction." Art. 104.

In the Constitution there is no provision on the subject with regard to the district judges; consequently, the law, in that respect, was allowed to remain as it existed before the adoption of the Constitution.

It is worthy of remark, however, that mention of this power was necessary with regard to the Supreme Court, because that instrument, for the first time, conferred upon it supervisory jurisdiction. And it was equally necessary that mention should have been made of the grant of power to the judges of the courts of appeal because there were no such courts in existence prior to its adoption.

Recurring to the power of the district judges to grant the writ, we find that the provisions of the Code of Practice furnish ample warrant for its exercise by them.

They are, that "this order * * * can be issued by courts whose jurisdiction in civil matters exceeds one hundred dollars," etc. Article 836.

"It is only the court which *exercises appellate jurisdiction* over an inferior court that can direct to the latter an order to perform any of the duties belonging to it." Article 839.

It is quite apparent that the judges of the district courts fulfil all the requirements; and it is manifest, that the power of these judges is not limited to causes wherein the writ comes in *aid* of their appellate jurisdiction, but extends to all classes of causes because they are judges of courts which *exercise appellate jurisdiction*, as well as *ordinary civil jurisdiction*.

The province of the writ is to command "judges of inferior courts * * * to *render justice*, and to perform the duties of their offices conformably to law." Article 837. Not in aid of their appellate jurisdiction, but generally.

"The object of this order is to prevent a denial of justice * * * and it should therefore be issued in all cases where the law has assigned no relief by the ordinary means, and when justice and reason require that some mode should exist of redressing a wrong, or an abuse of any return whatever." Article 830.

True it is that a great many cases can be cited wherein *mandamus* will not issue where there is an adequate and sufficient remedy afforded by appeal; but the converse of that proposition is equally true, and it has been decided that in case an appeal from an order refusing an injunction would be either an inadequate or ineffectual

remedy, *mandamus* lies to coerce the granting of injunction. State *ex rel.* Murray vs. Judge, 36 An. 582; State *ex rel.* Railroad Company vs. Judge, 35 An. 218.

That rule applies, particularly, to courts of record; but it must apply with stronger force to those not possessing any record, like those of justices of the peace. On account of their keeping no records, greater abuses are likely to arise; and hence there is the greater need for stricter surveillance over them, and for the prompt and speedy exercise of repressive measures to prevent same, and keep them within proper bounds.

We are of opinion that the case presented was one which came within the jurisdiction and competency of the respondent herein; and we therefore decline to interfere therewith.

It is therefore ordered and decreed that the preliminary writs be annulled and set aside, the relator's demand be rejected, and all costs taxed against them.

## On Application for Rehearing.

Relators complain that the respondent made a writ of *mandamus* peremptory, commanding Owen Lanares, justice of the peace, to grant a writ of injunction, restraining an execution sale under a judgment which he had theretofore rendere dagainst Joseph Bradford in their favor; said justice of the peace having declined to do so for the reason that " the ground alleged for the writ was *negatived by said judgment on its face.*"

The ground assigned for the injunction was and is, that " no notice of the trial had been served " upon the judgment debtor, plaintiff in injunction; and the relators allege, as cause for the writ of *certiorari* to issue, that " the petition for injunction was in direct conflict with the decree of (his) court "—the perfect regularity of the proceedings in his court, on the face of the papers, affording sufficient warrant for his refusal of the writ.

The drift of counsel's argument is (1) that the remedy of defendant Bradford, if any he had, was by appeal; (2) that his proceeding by injunction was a collateral attack upon the judgment.

*First*—If, as relators allege, the records in the justice court, and the judgment therein rendered, negative the defendant's complaint in terms, could an appeal have afforded an adequate and sufficient remedy?

We need not affirm that it was, or was not, in the instant case; as in the exercise of the supervisory power of this court by *certiorari* it can grant relief only when some illegality or nullity in the proceedings has been pointed out.

The employment of the writ of *mandamus* by the respondent was the exercise of an ordinary, not an extraordinary jurisdiction.

And in State *ex rel.* Murray vs. Judge, 36 An. 578, we said the court " will issue the writ in its discretion, according to the exceptional features of each case submitted."

Consequently, if it be conceded that it was a doubtful proposition whether or not a proper case was presented for the allowance of an injunction, the respondent was of that opinion and made the *mandamus* peremptory; and, on the disclosures made in the record, we do not feel warranted in saying that, in so doing, he abused the discretion which the law accords him.

*Second*—As to whether the proposed injunction proceeding was a collateral attack upon the judgment which was assailed, is foreign to the issue raised herein, as it neither appertains to the illegality of the *mandamus*, nor to the jurisdiction of the respondent. On the trial of the injunction it might so appear; but the question lies beyond the domain of our supervisory jurisdiction. In this case we are dealing with the judge who made the writ of *mandamus* peremptory and not with the injunction proceedings.

Rehearing refused.